**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1907-WJM-CBS
Consolidated with Civil Action No. 16-cv-2799-WJM-CBS

TYELER COOPER, on behalf of himself and all similarly situated persons,

    Plaintiff,

v.

NOBLE CASING, INC., a North Dakota corporation,

    Defendant.

## ORDER ON PENDING MOTIONS AND RULE 72(a) OBJECTION

Before the Court are two pending motions and one Rule 72(a) objection, namely:

- Plaintiffs' Motion for Supplemental Notice (ECF No. 108);

- Plaintiffs' "Objections to Magistrate's Unconstitutional Prior Restraint and Content Censorship Orders" ("Rule 72(a) Objection") (ECF No. 109); and

- Plaintiffs' Motion for Notice to Potential Plaintiffs and Conditional Certification ("Motion for Certification") (ECF No. 117).

For the reasons stated below, the Court denies the two motions, overrules the Rule 72(a) objection, and *sua sponte* de-consolidates this case from Case No. 16-cv-2799, except to the extent that Case No. 16-cv-2799 may encompass the 219 potential opt-in plaintiffs to whom notice of the pre-consolidation lawsuit was mailed last year.

### I. BACKGROUND

**A.** **Early Stages & Collective Action Certification**

Plaintiff Tyeler Cooper ("Cooper") filed this case on September 2, 2015. (ECF

No. 1.) Cooper alleged that Defendant Noble Casing, Inc. ("Noble") paid oilfield casing employees "a combination of hourly pay and pay by the foot of casing installed with no overtime," and that "[n]o overtime exemption applies to [these employees]"; therefore, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, Noble owed Cooper and similarly situated employees past-due overtime wages. (ECF No. ¶¶ 1, 5–7.)

On April 29, 2016, Cooper filed an unopposed motion for conditional collective active certification and approval of *Hoffman-La Roche* notice. (ECF No. 36.) On May 2, 2016, the Court entered an order granting that motion and establishing the following:

- the collective action would be defined as "all current and former casing services employees of Defendant paid per footage of casing ran at any time since 3 years prior to April 29, 2016";

- Noble would have 21 days to provide Cooper with a list of all potential collective action members' last known U.S. mail addresses;

- Cooper would then have 15 days to send his proposed form of notice by first class U.S. mail;

- potential collective action members would have 60 days from the postmark date of their notice to opt-in to the collective action; and

- Cooper was prohibited from sending "reminder notices or other follow-up [communications] to putative collective action members . . . during the 60-day [opt-in] period," except where a notice was returned as undeliverable.

(*Id.* at 1–2.) Cooper sent out notices as planned to 219 potential opt-in plaintiffs (*see* ECF No. 108 at 3), and 31 current and former employees opted into this action before

2

the opt-in period closed in August 2016. (ECF Nos. 44, 46–51, 57, 61.)

One of the individuals who opted in during the notice period was Adam Noskoviak. (*See* ECF No. 46-1 at 6.) Noskoviak signed his opt-in notice on June 16, 2016, and it was filed with this court on June 28, 2016. (*Id.*)

**B.     The *Noskoviak* Action**

On August 5, 2016, attorneys J. Derek Braziel, Jay Forester, and Jack Siegel from Dallas, Texas, filed a lawsuit in the United States District Court for the District of North Dakota, naming Noskoviak as lead plaintiff and Noble as defendant. (*See* ECF No. 69 (copy of original complaint filed in *Noskoviak v. Noble Casing, Inc.*, Case No. 16-cv-0283 (D.N.D.)).) On September 9, 2016, Noskoviak filed an amended complaint in that lawsuit. (*See* ECF No. 72.) The lawsuit was purportedly on behalf of what the complaint calls "Casing Employees" or "CEs" (*id.* ¶¶ 1, 7), defined as Noble's "non-exempt employees [who] directly and indirectly provide Defendants' casing and other services to Defendants' customers" (*id.* ¶ 1). The amended complaint alleged two FLSA violations: (1) the "Uncounted Hours Policy," alleging that Noble was required, but failed, to pay overtime to employees being paid on a per-foot or per-job basis; and (2) the "Overtime Miscalculation Policy," alleging that Noble failed to include certain types of compensation (*e.g.*, non-discretionary bonus pay) when calculating Casing Employees' regular pay rate, leading to an erroneous time-and-a-half calculation on overtime hours actually paid. (*Id.* ¶¶ 2–4.) The amended complaint also alleged a violation of North Dakota's overtime law. (*Id.* ¶ 34.)

The parties apparently agreed that the Uncounted Hours Policy is precisely the same issue raised here in Cooper's lawsuit. Accordingly, Noble filed an unopposed

3

motion to transfer the *Noskoviak* action to this Court under the first-to-file rule, and the District of North Dakota granted that motion. That transfer led to a new case being opened in this District (16-cv-2799), and Noble then filed an unopposed motion to consolidate that new case into this one. (ECF No. 65.)

One day after Noble filed the motion to consolidate and before the Court had ruled on it, the Court granted Cooper's motion to file an amended complaint adding a cause of action for violation of North Dakota's overtime law. (ECF Nos. 58-1, 66, 67.) Cooper's amended complaint continued to assert a single theory of FLSA liability, namely, what the *Noskoviak* amended complaint designated the Uncounted Hours Policy. (ECF No. 67 ¶ 7.)

Four days after permitting Cooper to amend, the Court granted Noble's unopposed motion to consolidate. (ECF No. 68.) Noskoviak's lawyers (Messrs. Braziel, Forester, and Siegel) then entered their appearance "as additional counsel" on behalf of Cooper. (ECF Nos. 74, 75, 78.)

**C.     Mr. Braziel's Letter**

Beginning in late January 2017, Mr. Braziel began sending letters to Noble employees (or former employees) which read in relevant part as follows:

> We need your help with an unpaid overtime lawsuit investigation we are conducting on behalf of we are conducting on behalf of [*sic*] workers employed by **Noble Casing, Inc. ("Noble Casing")** over the past three years who **earned pay based on the amount of casing they laid ("Footage Pay")**. We currently represent over 30 former Noble workers pursuing overtime claims that worked for Noble throughout the country, but they (and others who may join the suit in the future) need helpful information from other employees who—like you—worked for Noble within the past three years to strengthen their claims.

4

> The federal lawsuit alleges that Noble failed to pay proper overtime to current and former casing employees who earned pay [*sic*] Footage Pay because Noble the company did not pay:
>
> - Overtime for all hours when the company paid workers on a Footage Pay [basis]; &
>
> - Overtime at the proper rate because it failed to [account for?] all pay to calculate overtime[.]
>
> Based on pay stubs and information we have reviewed, we estimate that Noble workers paid on [a] Footage Pay [basis] may be due over a **thousand dollars *per week*** of their employment (doubled amount pursuant to federal statute) if the company violated federal wage law. We have attached a redacted pay stub to this letter . . . .
>
> \* \* \*
>
> Assuming [the worker reflected in the pay stub] worked at least 43 hours of footage overtime, Noble would potentially owe him $2,300 in damages for only that two-week period if it violated federal wage law. The large amount of potential damages—**which could exceed $50,000 per year of employment and over $150,000 over a full three year-period**—mean a lot to our clients and those who still may elect to pursue their claims.
>
> Because these wages mean a lot to our other clients and others who may pursue their rights, we would like to speak to you about the following topics:
>
> - Whether you have received a notification regarding this lawsuit;
>
> - The trucks you drove, rode in, or loaded during your employment;
>
> - Whether Noble Casing properly paid you for all overtime hours[.]
>
> \* \* \*
>
> Your help could allow us to strengthen our clients' claims and possibly allow us to send a second court-approved notice to eligible workers about this lawsuit. On behalf of our

5

> clients, our law firms and those who may elect to join the
> lawsuit in the future, we thank you for your time and
> consideration.

(ECF No. 85-3 (formatting in original).)

Noble somehow obtained one of these letters and, on February 10, 2017, filed an "Emergency Motion for Order to Plaintiffs' Counsel to Cease and Desist Unauthorized and Misleading Communications to Potential Opt-In Plaintiffs." (ECF No. 85.) Noble argued that "Plaintiffs' counsel's letter is nothing more than a thinly veiled solicitation for new clients couched as an investigative inquiry. This unauthorized communication is not only factually incorrect, misleading, and coercive, but it also usurps the Court's authority to monitor the notice process in this [FLSA] collective action . . . ." (*Id.* at 1.) The Court referred that motion to U.S. Magistrate Judge Craig B. Shaffer. (ECF No. 86.)

Judge Shaffer held a hearing on February 15, 2017. (*See* ECF No. 89.) His minute order summarizing the outcome of the hearing states, "Plaintiffs' counsel agrees not to send out anymore investigative letters pending a ruling on [Noble's] motion." (*Id.* at 1.) Mr. Braziel's description of that hearing, however, is somewhat different. He acknowledges that he "voluntarily agreed not to send the Investigation Letter to appease Magistrate [Judge] Shaffer," but notes that Judge Shaffer later stated more directly, "Counsel, stop talking to them [*i.e.*, the addressees of the letters] until I rule on the motion." (ECF No. 109 at 3–4 (internal quotation marks omitted).) Mr. Braziel complained that this was "effectively" a temporary restraining order against him, to which Judge Shaffer responded,

> Counsel, the problem I've got is, I don't know that the
> defense position is right or wrong. . . .

6

> The concern I've got is, if something improper took place,
> I don't want to exacerbate that problem, so I'm struggling.
> I understand to some extent it's—it's not a TRO in that
> respect; but, Counsel, if, in fact, improper behavior took
> place, I don't want to exacerbate it. So I'm looking for some
> interim solution.

(ECF No. 109-1 at 3.)

On February 28, 2017, Judge Shaffer held a hearing on the merits and ultimately denied Noble's motion. (ECF No. 92 at 1.) Judge Shaffer nonetheless ordered,

> Plaintiff's counsel is **PROHIBITED** from sending the same
> letter in the same case. Any further letter[s] must be clear
> that they are investigative in nature.
>
> By close of business on **March 6, 2017**, counsel shall send
> Magistrate Judge Shaffer an investigative letter that both
> sides have collaborated on. If counsel is unable to agree on
> the letter or if the court has questions, a hearing will be set
> on **March 7, 2017**.

(*Id.* at 2 (formatting in original).)

A hearing was actually convened on March 31, 2017. Judge Shaffer apparently did not reach a final resolution during that hearing as to the content of Mr. Braziel's letter, but again ordered submission of "a proposed investigative letter that the defendant has reviewed by close of business on **April 4, 2017**." (ECF No. 99 at 1 (formatting in original).)

Judge Shaffer held his last hearing on this matter on April 10, 2017. He permitted Mr. Braziel "to send the investigative letter with the revisions as stated on the record." (ECF No. 103 at 1.) Mr. Braziel apparently mailed that letter that same month. (*See* ECF No. 104; ECF No. 114 at 2.) The letter reads as follows, save for the struck-out sentence showing what Judge Shaffer required Mr. Braziel to remove from the proposed final draft:

7

My name is J. Derek Braziel and I am a lawyer with the law firm of Lee & Braziel LLP.  Don't worry, you are not in trouble!  My law firm has teamed up with the Siegel Law Group PLLC and the Law Offices of Brian D. Gonzales, to represent <u>over 30</u> individuals who have sued **Noble Casing, Inc. ("Noble")** to recover **unpaid overtime wages**.

<center>***<u>We need your help</u>*** to continue investigating our clients' claims.</center>

Our clients claim Noble paid them, at least in part, based on the amount of casing they laid ("Footage Pay"), but failed to pay them proper overtime wages.  Our clients are participating in two lawsuits which have been consolidated together in Colorado federal court.  The lawsuits allege Noble failed to pay proper overtime wages to casing workers who earned Footage Pay because Noble:

- <u>Failed to count</u> all hours of work when a casing worker was paid Footage Pay; and

- Underpaid casing workers <u>by not including Footage Pay in the overtime pay rate</u>.

Of course, Noble denies the allegations and other asserted facts, which is why we need your help.  As someone who may have worked for Noble as a casing worker in the last three years, we believe you may have information that **will help our clients succeed in the lawsuits**.

The purpose of this letter is to gather information from you that we hope will **help us win the cases**.  You are under <u>no</u> obligation respond to this letter or contact us if you have information.  Why is your help important?  Because…

<center>***The stakes are <u>high</u> for our clients.***</center>

~~Based on the attached pay stub from one of our clients,~~ **~~Noble could potentially owe him $2,369.13~~** ~~(doubled amount under federal statute) for that one pay period alone—assuming he worked 43 hours of unpaid footage overtime.~~  Because these wages mean a lot to our clients, we would like to speak to you about the following topics:

- Whether you have received a notification regarding the overtime lawsuit against Noble;

Case 1:15-cv-01907-WJM-MLC   Document 126   Filed 10/27/17   USDC Colorado   Page 9 of 19

- The trucks you drove, rode in, or loaded during your employment with Noble;

- The amount of hours you worked each week & whether Noble paid you for all overtime hours.

We only need **FIVE MINUTES of your time** to gather this information.  You can call us toll free at . . . .  Thank you for your time and consideration.

(ECF Nos. 100-1, 104-1 (formatting in original).)

On April 24, 2017, Mr. Braziel filed the Rule 72(a) Objection, seeking review of all of Judge Shaffer's orders on this matter.  (ECF No. 109.)

### D.  Other Motions

On April 21, 2017, just a few days before the Rule 72(a) Objection, Cooper filed a Motion for Supplemental Notice, claiming that a new round of opt-in notices should be sent to potential plaintiffs by e-mail and text message, because allegedly very few received the original notices (sent by U.S. mail).  (ECF No. 108.)  Then, on May 19, 2017, Cooper moved to conditionally certify a new opt-in class, and for approval of notice to that class.  (ECF No. 117.)

## II.  RULE 72(a) OBJECTION (ECF No. 109)

### A.  Standard of Review

When reviewing an objection to a magistrate judge's non-dispositive ruling, the Court must affirm the ruling unless it finds that the ruling is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Ariza v. U.S. West Commc'ns, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).  The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp. v.*

9

*Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (internal quotation marks omitted). The "contrary to law" standard permits "plenary review as to matters of law," 12 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3069 (2d ed., Apr. 2016 update), but the Court will set aside a magistrate judge's order only if he or she applied the wrong legal standard or applied the appropriate legal standard incorrectly, *see Wyoming v. U.S. Dep't of Agric.*, 239 F. Supp. 2d 1219, 1236 (D. Wyo. 2002). In short, "[b]ecause a magistrate judge is afforded broad discretion in the resolution of non-dispositive . . . disputes, the court will overrule the magistrate judge's determination only if his discretion is abused." *Ariza*, 167 F.R.D. at 133.

**B.     Effect of Untimeliness in This Case**

Rule 72(a) sets a fourteen-day deadline for objections to a magistrate judge's nondispositive rulings. Mr. Braziel acknowledges that the Rule 72(a) Objection, filed on April 24, 2017, is timely only as to Judge Shaffer's April 10, 2017 order, *i.e.*, his final order approving the revised investigation letter subject to removal of one sentence (Part I.C, above). (ECF No. 109 at 8.) As to the three preceding orders, Mr. Braziel invites the Court to exercise its discretion to re-examine them under its inherent authority to reconsider interlocutory rulings. (*Id.* at 8–9.) *See also Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) ("Rule 72(a), and its statutory companion, *see* 28 U.S.C. § 636(b)(1), place limits on a party's ability to seek review of a magistrate judge's non-dispositive order. However, a party's failure to seek timely review does not strip a district court of its power to revisit the issue."); *Estate of Vera Cummings v. United States*, 2014 WL 11512639, at *2 (D.N.M. Oct. 7, 2014) ("This principle makes sense because if the Court itself rules on a nondispositive matter, the Court is free to correct

its own interlocutory ruling in the future.").[1]

The Court sees no reason to exercise its discretion as Mr. Braziel suggests. To begin, Judge Shaffer's alleged TRO preventing further communication is now moot. But more importantly, if the Court were inclined to *sua sponte* reconsider Judge Shaffer's rulings, the likelihood of reversing or vacating them in Mr. Braziel's favor is low. It is frankly far more likely the Court would determine that Judge Shaffer gave Mr. Braziel far too much benefit of the doubt. But in the absence of a timely objection from any party, the Court elects to leave Judge Shaffer's first three rulings undisturbed.

As to his fourth ruling, to which Mr. Braziel timely objected, all Judge Shaffer required Mr. Braziel to do was exclude one sentence from the proposed revised investigation letter. Mr. Braziel offers no argument why that one sentence was of special importance, or why its exclusion was clearly erroneous or contrary to law. Thus, Mr. Braziel has stated no proper Rule 72(a) argument, and the Rule 72(a) Objection is accordingly overruled.

### III. MOTION FOR CERTIFICATION (ECF No. 117)

Cooper, by way of his newly added counsel, moves for certification of a new collective action, one that is significantly broader than the collective action previously certified. (ECF No. 117.) Cooper bases this motion on the allegations against Noble as stated in the *Noskoviak* amended complaint.

There are two potentially important differences—one obvious, one much less so—between the scope of the *Noskoviak* amended complaint and that of Cooper's

---

[1] If the district judge elects to review a magistrate judge's nondispositive order *sua sponte*, the district judge must still apply the usual "clearly erroneous or contrary to law" standard. *Allen*, 468 F.3d at 658.

amended complaint. The obvious difference is that Cooper's amended complaint asserts only the Uncounted Hours Policy, whereas the *Noskoviak* amended complaint alleges both the Uncounted Hours Policy and the Overtime Miscalculation Policy. (*See* ECF No. 72 ¶¶ 2–4.) As to this difference, Noble argues that "the *Noskoviak* Complaint limits its miscalculation of overtime rates to employees who performed casing services, all of whom have already received notice of this lawsuit." (ECF No. 120 at 9 (emphasis removed).) In other words, Noble seems to say, there is no need for further notice just to inform all of the previously notified employees or former employees of a new liability theory.

This response from Noble gets to the heart of the second, much less obvious difference between Cooper's amended complaint and the *Noskoviak* amended complaint. The *Noskoviak* amended complaint seeks to bring within its scope all "Casing Employees," defined as "non-exempt employees [who] directly and indirectly provide Defendants' casing and other services to Defendants' customers." (ECF No. 72 ¶ 1.) Noble understands this as a more verbose way of saying "casing services employees," which is the scope of the already-certified collective action. (*See* ECF No. 39 ¶ 2; *see also* ECF No. 120 at 4, 8–9.) But Plaintiffs' motion now seeks to certify a collective action encompassing "*[a]ll non-exempt workers* employed by [Noble] in the United States over the last three years" who may have been subject to the Uncounted Hours or Overtime Miscalculation Policies. (ECF No. 117 at 4 (emphasis added).) In other words, Plaintiffs now wish to bring in potentially every person employed by Noble in a non-exempt position, anywhere in the country, for the last three years. This, Noble says, is serious departure from the *Noskoviak* amended complaint.

12

Plaintiffs consider Noble's argument "disingenuous" and retort that the *Noskoviak* amended complaint "clearly provides an expansive definition of the proposed class" which was "specifically formulated to include all [non-exempt employees]." (ECF No. 121 at 8.) Plaintiffs' emphasize the words "indirectly" and "other services" in their definition of "Casing Employees." (*Id.* at 8–9.) The Court, however, strongly suspects that Plaintiffs have engaged in deliberate gamesmanship to vastly expand this case. This is so for the following reasons.

First, there is already strong evidence of gamesmanship in general. Messrs. Braziel, Forester, and Siegel somehow learned about this lawsuit as filed by Cooper, and decided that they could do better than Cooper's original Colorado counsel. So they convinced Noskoviak—one of the opt-in plaintiffs—to sign on to a new lawsuit in North Dakota, where Noble has significant operations. By asserting the Uncounted Hours Policy, Noskoviak's attorneys must have known that they were duplicating the Cooper lawsuit and so the chances of transfer and consolidation were high (and indeed, they did not oppose either transfer or consolidation). Shortly after consolidation, Mr. Braziel began sending out his letters, likely using the addresses provided to Cooper's counsel for purposes of sending out the opt-in notice—information he likely never could have obtained at this stage but for transfer and consolidation.

Second, although Plaintiffs believe Noble's reading of the *Noskoviak* amended complaint is disingenuous, the Court came to the same interpretation as Noble when considering whether to grant the motion to consolidate. It was certainly not obvious to the Court that the *Noskoviak* amended complaint encompassed potentially all non-exempt employees. Indeed, a party wishing to bring all non-exempt employees within a

13

proposed collective action will usually say precisely that, with no qualification. Plaintiffs instead crafted an opaque definition—"non-exempt employees [who] directly and indirectly provide Defendants' casing and other services to Defendants' customers" (ECF No. 72 ¶ 1)—that sounds somewhat like the already-approved collective action ("casing services employees") but with some fuzziness ("indirectly," "other services") which, on its face, looks like typical lawyerly hedging. Only now, in the context of Plaintiffs' instant motion, is it clear that these words are not intended as hedges, but as load-bearing walls. The fact that Plaintiffs did not say "all non-exempt employees" from the beginning strongly suggests that their current definition was carefully crafted to create an ambiguity that could be exploited later.[2]

The Court cannot stop Messrs. Braziel, Forester, and Siegel from attempting to pursue a collective action on behalf of all non-exempt employees, but the Court can prevent those claims from going forward under this civil action number. The purpose of consolidation is to ensure "that the business of the court may be dispatched with expedition and economy while providing justice to the parties." *Breaux v. Am. Family Mut. Ins. Co.*, 220 F.R.D. 366, 367 (D. Colo. 2004). Plaintiffs' declarants believe that there are "over 500" persons potentially within the proposed expanded collective action. (*See* ECF Nos. 117-3 through 117-8, ¶ 5.) It is not clear whether this includes the 219

---

[2] Plaintiffs argue that Noble "already acknowledged that Plaintiff[s'] proposed class includes non-casing specific [non-exempt employees]" because Noble answered the *Noskoviak* amended complaint and admitted that one of its named plaintiffs "'was a Rack Tech I for Defendant Noble.'" (ECF No. 121 at 8 (quoting Noble's Answer, ECF No. 73 ¶ 6).) Plaintiffs apparently mean to assert that a "Rack Tech I" is not a "casing services employee," which is the class of employees within the collective action the Court previously certified. (*See* ECF No. 39 ¶ 2.) That distinction is not established anywhere in the record, and in any event, Noble's answer admitting a former employee's employment title is not an admission by Noble to a broadened collective action scope. It is simply a factual admission.

14

casing services employees to whom notice was mailed last year. Assuming it does, that is still an additional 281 or more potential parties. Had the Court understood that consolidation would lead to renewed certification proceedings seeking to more than double the scope of the already-certified collective action, the Court would have found that the inevitable added delay and complexity counseled against consolidation except as to the 219 casing services employees that overlap between the *Noskoviak* lawsuit and this lawsuit.

Now that the Court fully understands the intended scope of the *Noskoviak* amended complaint, the Court denies the Motion for Certification (ECF No. 117), *sua sponte* reconsiders its consolidation order (ECF No. 68), and vacates that order except to the extent that Case No. 16-cv-2799 was intended to bring within it any of the 219 persons to whom Cooper mailed notice pursuant to this Court's order of May 2, 2016 (ECF No. 39). As to named plaintiffs and potential collective action members other than those 219, Case No. 16-cv-2799 is de-consolidated from this case and the two cases will proceed separately. As to the Overtime Miscalculation Policy specifically, it may still be raised in this lawsuit (to the extent applicable) as part of Cooper's calculation of the damages he and the opt-in Plaintiffs believe they are owed for unpaid overtime wages.[3]

This de-consolidation will require some work on counsel's part because both lawsuits will need a new scheduling order. In that regard, Case No. 16-cv-2799 will need a scheduling order setting a deadline for a collective action certification motion, among all the other deadlines normally established in a scheduling order. As for this

---

[3] Any overlap of matters to be decided between this lawsuit and Case No. 16-cv-2799 may be addressed in the usual ways, such as through doctrines of claim and issue preclusion, as applicable.

15

lawsuit, the Court has learned from the record of the parties' most recent status conference with Judge Shaffer (on October 4, 2017) that previously-set deadlines have lapsed and no new deadlines would be set—in effect, a stay, although never formally entered as such—while the parties awaited the Court's ruling on the Motion for Certification. (*See* ECF No. 125.)[4] Now that the parties have the Court's ruling, it is time to move forward so that this case may be positioned for dispositive motions and/or trial in a reasonably expeditious manner.

### IV. MOTION FOR SUPPLEMENTAL NOTICE (ECF No. 108)

Lastly, the Court must resolve Plaintiffs' Motion for Supplemental Notice. (ECF No. 108.) Plaintiffs argue that 31 opt-ins out of 219 notices mailed is an "[a]nemic" rate and attributes that outcome to oilfield workers' transient lifestyle and the consequent difficulty in receiving mail. (*Id.* at 5–6.) Plaintiffs understand that 41 out of 219 mailings initially came back undeliverable and that follow-up notice mailed in response to those returned mailings came back undeliverable again as to only 23 addresses—meaning that 196 of 219 mailed notices (just shy of 90%) were eventually delivered. (*Id.* at 9.) But Plaintiffs argue that some unknown share of those mailings probably never reached the intended recipients because many potential plaintiffs are likely to have moved since the time they gave a mailing address to Noble, yet the Postal Service has no duty to ensure that the person to whom a letter is addressed actually resides at the address on the envelope. (*Id.* at 9–11.) Plaintiffs therefore argue that the Court should authorize supplemental notice via e-mail and text message. (*Id.* at 11–13.)

In other circumstances, Plaintiffs' arguments may have merit. In this lawsuit,

---

[4] The Court has listened to the audio recording of that hearing.

however, Cooper and Noble specifically agreed on a notice procedure, namely, "by First Class U.S. Mail the notice to the last known addresses of each of the individuals identified [by Noble as potentially within the collective action]."  (ECF No. 36-1 ¶ 4.) Moreover, Cooper and Noble anticipated "notices that are returned to counsel for Plaintiff as undeliverable," to which Cooper's counsel could send a follow-up notice, but not otherwise.  (*Id.* ¶ 6.)  The Court approved the parties' agreed procedures.  (ECF No. 39.)  There is nothing presented in the Motion for Supplemental Notice that the parties could not have anticipated when negotiating the agreed-upon notice procedures that the Court approved.  The Court therefore sees no reason to relieve Cooper of his previous agreement with Noble.  The Motion for Supplemental Notice is denied.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Motion for Supplemental Notice (ECF No. 108) is DENIED;

2. Plaintiffs' Rule 72(a) Objection (ECF No. 109) is OVERRULED;

3. Plaintiffs' Motion for Certification (ECF No. 117) is DENIED;

4. Had the Court understood the scope of the collective action Plaintiffs were intending to pursue through Case No. 16-cv-2799, the Court would have granted Noble's Motion to Consolidate (ECF No. 65) only as to the 219 individuals that overlap between this case and Case No. 16-cv-2799.  To effectuate that intent, the Court's order consolidating this action with Case No. 16-cv-2799 (ECF No. 68) is PARTIALLY VACATED as follows:

   a. the 219 individuals to whom notice was mailed pursuant to this Court's order of May 2, 2016 (ECF No. 39) will remain a part of this lawsuit and

17

        only this lawsuit, even if Case No. 16-cv-2799 was also intended to encompass them;

    b.   all other named plaintiffs and potential opt-in plaintiffs that Case No. 16-cv-2799 was intended to encompass will remain a part of Case No. 16-cv-2799 and only Case No. 16-cv-2799, which shall now proceed separately from this lawsuit;

5.   Adam Noskoviak is TERMINATED as a party in Case No. 16-cv-2799, but he shall remain an opt-in plaintiff in this lawsuit;

6.   The caption for Case No. 16-cv-2799 is AMENDED to read as follows:

    ZACHARY MILLER and all others similarly situated under 29 USC § 216(b),

        Plaintiff,

    v.

    NOBLE CASING, INC.,

        Defendant.

7.   No later than **November 10, 2017**, counsel in this lawsuit shall confer and develop proposed new deadlines to be embodied in an amended scheduling order;

8.   No later than **November 30, 2017**, counsel for Plaintiffs in this lawsuit shall file a motion to amend the scheduling order, proposing the parties' agreed-upon deadlines (or, to the extent the parties could not agree, stating their individual positions), and counsel for Plaintiffs shall also e-mail an editable copy of that proposed amended scheduling order to martinez_chambers@cod.uscourts.gov;

9.   No later than **November 10, 2017**, counsel in Case No. 16-cv-2799 shall confer

and prepare a proposed initial scheduling order according to the "Proposed Scheduling Order and Instructions" available at http://www.cod.uscourts.gov/CourtOperations/RulesProcedures/Forms.aspx;

10. No later than **November 30, 2017**, counsel for Plaintiffs in Case No. 16-cv-2799 shall file the parties' proposed scheduling order, and shall also e-mail an editable copy of that proposed scheduling order to martinez_chambers@cod.uscourts.gov;

11. The Court's restrictions on font size and formatting in Plaintiffs' filings (ECF No. 119) shall remain in full force and effect in this case and in Case No. 16-cv-2799, and shall be strictly enforced;[5]

12. The Clerk shall file a copy of this order in Case No. 16-cv-2799;

13. The Clerk shall also file Magistrate Judge Shaffer's orders at ECF Nos. 89, 92, 99, 103 in Case No. 16-cv-2799, and those orders shall govern in that case as well as this one.

Dated this 27th day of October, 2017.

BY THE COURT:

William J. Martinez
United States District Judge

---

[5] Noble is warned that if the Court perceives any abuse of formatting requirements in its papers, or any attempt to take advantage of Plaintiffs' restrictions, the Court will subject Noble to similar restrictions.